Vincent P. BRADY, Plaintiff,

v.

TRANS WORLD AIRLINES, INC., a corporation of the State of Delaware, and The International Association of Machinists, an unincorporated association, Defendants.

Civ. A. No. 1884.

United States District Court
D. Delaware.

July 11, 1961.

Irving Morris, of Cohen & Morris, Wilmington, Del., for plaintiff.

Stephen E. Hamilton, Jr., of Richards, Layton & Finger, Wilmington, Del., Edward R. Neaher and Charles J. Prentiss, of Chadbourne, Parke, Whiteside & Wolff, New York City, of counsel, for defendant Trans World Airlines, Inc.

H. Albert Young and Bruce M. Stargatt, of Morford, Young & Conaway, Wilmington, Del., and James L. Highsaw, Jr., of Mulholland, Robie & Hickey, Washington, D. C., for defendant International Ass'n of Machinists.

CALEB M. WRIGHT, Chief Judge.

Plaintiff has sued the above-named defendants for reinstatement to his job and various forms of damages. He contends his discharge by defendant TWA, purportedly based upon a valid union-shop agreement with defendant IAM, was in violation of the Railway Labor Act.[1] Plaintiff and the IAM have filed cross-motions for summary judgment.

■ After considering the oral argument and various parts of the record, it appears this case may not be disposed of under Rule 56, 28 U.S.C.A., as construed by our Court of Appeals. In this Circuit, a District Court, in disposing of a motion for summary judgment, may not draw inferences from admitted facts, Bragen v. Hudson County News Company, 3 Cir., 1960, 278 F.2d 615; may not use supporting affidavits to overcome well-pleaded facts, Hart & Co. v. Recordgraph Corp., 3 Cir., 1948, 169 F.2d 580; and apparently may not even assume facts against the moving party, Krieger v. Ownership Corp., 3 Cir., 1959, 270 F.2d 265.

■ In the present case, the question of whether Brady was discharged "for any reason other than the failure * * * to tender the periodic dues, initiation fees, and assessments (not including fines and penalties) uniformly required as a condition of acquiring or retaining membership," (Railway Labor Act, § 2, Eleventh), is at best one of mixed fact and law. Of a similar nature is the issue of "discrimination" on the part of the IAM. Although there are many admitted facts, there is a sharp dispute as to the inferences to be drawn therefrom, and the Court cannot say the law compels one possible inference as against another on each material issue. The area of agreed facts also appears somewhat less than counsel have presumed.

■ Defendant IAM has moved to strike plaintiff's demand for trial by jury. Intermixed with this issue is the question of whether plaintiff, if successful on his substantive claims, might be entitled to punitive damages. If so, then his claim for a jury trial may be well-founded, for a court of equity, in the absence of express statutory provisions,

---

1. That statute is set out at 45 U.S.C.A. §§ 151–163, 181–188.

is without authority to assess punitive damages. William Whitman Co. v. Universal Oil Products Co., D.C.D.Del.1954, 125 F.Supp. 137. This latter problem will be dealt with first.

■ Plaintiff relies on two separate and distinct statutory provisions. The first is based on § 2, Eleventh, of the Railway Labor Act, a 1951 enactment in the nature of a proviso "intended to relax the prohibitions contained in paragraphs fourth and fifth of Section 2 * * * against all forms of union security agreements. * * * "[2] S.Rep. No. 2262, 81st Cong., 2nd Sess. (1950). The Senate Report further stated, "[T]he terms of [§ 2, Eleventh] are substantially the same as those of the Labor-Management Relations Act as they have been administered. * * * " Violations of the corresponding provisions in the Taft-Hartley Act, 29 U.S.C.A. § 158(a) (3), (b) (2), cannot lead to punitive damages. Local 60, United Brotherhood of Carpenters, etc. v. N.L.R.B., 1961, 365 U.S. 651, 81 S.Ct. 875, 6 L.Ed.2d 1. Moreover, the regulation of the economic relations between labor and management is an exceedingly delicate matter, and this Court is unwilling to employ the crude device of punitive damages as a remedy in causes founded on a detailed and pervasive federal statutory scheme without express authorization from Congress. See

United Mine Workers of America v. Patton, 4 Cir., 1954, 211 F.2d 742, 47 A.L.R. 2d 850.

■ Plaintiff's second statutory basis for this action is the duty of a union to bargain fairly on behalf of those it represents and not to act with "hostile discrimination" towards members of the bargaining unit. Steele v. Louisville & N. R. Co., 1944, 323 U.S. 192, 203, 65 S.Ct. 226, 89 L.Ed. 173. Although the rationale that express statutory authority is necessary to award punitive damages as a remedy for violations of a federal statute is somewhat inapposite where the statutory duty itself is only implicit, the Court does not believe the Steele doctrine authorizes such relief.[3] No case has yet gone so far.[4] Moreover, the very threat of punitive damages, as a remedy for violations of a duty which in effect limits the scope of collective bargaining between labor and management, may have unforeseeable effects upon the institution of free collective bargaining itself.[5] In this situation, the fact that the duty itself has been read into the Act by the courts may well be cause to limit the relief obtainable to equitable remedies and compensatory damages. Because of this danger, the duty itself has been restricted by the courts and gives only limited protection.[6] Under these circumstances, the Court does not believe

2. The Court's jurisdiction over this phase of the action is clear, for § 2, Fourth, Fifth, have been authoritatively construed to be enforceable by the courts. Texas & N. O. R. Co. v. Brotherhood of Railway and Steamship Clerks, 1930, 281 U.S. 548, 50 S.Ct. 427, 74 L.Ed. 1034; Virginian Railway Co. v. System Federation No. 40, 1937, 300 U.S. 515, 57 S. Ct. 592, 81 L.Ed. 789; Railway Employees' Co-op. Association v. Atlanta B. & C. R. Co., D.C.D.Ga.1938, 22 F. Supp. 510. Since § 2, Eleventh, was intended solely to limit the effect of those sections, its interpretation and enforcement is likewise left to the courts.

3. Full equitable relief in the form of injunctions is obtainable to remedy Steele violations in spite of the provisions of the Norris-La Guardia Act, 29 U.S.C.A. §§ 101–115. Graham v. Brotherhood of

Locomotive Firemen, 1949, 338 U.S. 232, 70 S.Ct. 14, 94 L.Ed. 22.

4. The cases cited by plaintiff all involve state law and are, therefore, inapposite here.

5. See the dissent of Mr. Chief Justice Warren in United Automobile, etc., Workers of America v. Russell, 1958, 356 U.S. 634, 652, 78 S.Ct. 932, 2 L.Ed.2d 1030. The majority held there that since the state had power to act, it could award all damages allowed by state substantive law. The dissent, however, assumes some pertinency when, as here, we are dealing solely with federal law.

6. See Wellington, Union Democracy and Fair Representation: Federal Responsibility in a Federal System, 67 Yale L.J. 1327, 1339–43 (1958). Most, if not all, of the successful cases based upon Steele

punitive damages may be recovered in actions based upon the Steele doctrine.

■ The complaint also asserts a common law cause of action, based on state law, either of wrongful discharge (against TWA) or malicious interference with an employment relationship (against the IAM).[7] The issue of punitive damages need not be reached here, for the Court finds § 2, Eleventh, of the Railway Labor Act has deprived the states of their power to regulate discharges under union security agreements within the scope of that statute. Unlike the Taft-Hartley Act,[8] the union security provisions of the Railway Labor Act are to be effective "notwithstanding any * * * law * * * of any state * * *." Section 2, Eleventh. In view of the detailed and pervasive nature of § 2, Eleventh, and the explicit language contained therein, the Court finds its provisions, in conjunction with § 2, Fourth, Fifth, state in full the rights and duties of employers, unions, and individual employees under union security agreements in the railroad industry. State law can have no application in such a situation.[9]

This holding is in no way a ruling upon the vitality of state law in discharge cases not involving union security agreements. See e. g. Moore v. Illinois Central R. Co., 1941, 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089. Congress has chosen to treat union security problems under the Railway Labor Act in a manner different from that applicable to other grievances. Section 2, Fourth, Fifth, have been traditionally enforced by the courts,[10] and the scope of the limited dispensation from their harsh effect afforded by § 2, Eleventh, must likewise be left to the judiciary.[11] Other problems, such as lay-offs by seniority, discharges for inefficiency and the like, not coming within § 2, Fourth, Fifth, and, therefore, outside § 2, Eleventh, cannot be within the scope of this ruling.

■ In view of the foregoing, plaintiff's demand for a jury trial must be stricken. Except for punitive damages, the main relief sought, reinstatement, is equitable in nature, the other requests for monetary compensation, such as back pay, being incidental to this. See Steffen v. Farmers Elevator Service Co., D.C.N.D. Iowa 1952, 109 F.Supp. 16.

■ A second reason for striking the demand for a jury trial is that the statutory mandates relied upon do not embrace actions known at common law and are thus outside the scope of the Seventh Amendment. See Steffen v. Farmers Elevator Service Co., supra. Section 2, Fourth, Fifth, protecting the employment relation from discrimination aimed at union activity or inactivity, with the limited exception granted by § 2, Elev-

---

have involved racial discrimination. It seems clear, however, the doctrine is not limited solely to this form of discrimination.

7. Absent other factors, the Court might have jurisdiction of these causes under Bell v. Hood, 1946, 327 U.S. 678, 66 S. Ct. 773, 90 L.Ed. 939; Hurn v. Oursler, 1933, 289 U.S. 238, 53 S.Ct. 586, 77 L. Ed. 1148.

8. 29 U.S.C.A. § 164(b), specifically allows prohibitory state law to control over federal in determining the validity of union security agreements under the Taft-Hartley Act.

9. To hold otherwise would endanger the federal scheme, whether the state law be more liberal or more strict in dealing with union security agreements. The Supreme Court has found Congress has filled the field and deprived states of their power to act in situations far less strong than this. See Commonwealth of Pennsylvania v. Nelson, 1956, 350 U.S. 497, 76 S.Ct. 477, 100 L.Ed. 640.

10. See note 2, supra.

11. There is an exception to this rule. Section 2, Eleventh (c), in order to prevent compulsory dual unionism, allows its requirements to be satisfied by membership in a railroad union "national in scope" and qualified under § 3, First, as an elector of the union representatives on the National Railroad Adjustment Board. Section 3, First (f), leaves the determination as to qualification to a special board rather than the courts. Pennsylvania R. Co. v. Rychlik, 1957, 352 U.S. 480, 77 S.Ct. 421, 1 L.Ed.2d 480. This is not an issue in the present case.

enth, establish rights and duties "unknown to the common law." N. L. R. B. v. Jones & Laughlin Steel Corp., 1937, 301 U.S. 1, 48, 57 S.Ct. 615, 629, 81 L.Ed. 893. Likewise, the Steele doctrine, imposed because Congress saw "fit to clothe the bargaining representative with powers comparable to those possessed by a legislative body both to create and restrict the rights of those whom it represents * * *," limits the power of unions much as the equal protection clause of the United States Constitution, Amend. 14, limits state action. Steele v. Louisville & N. R. Co., supra, 323 U.S. at page 202, 65 S.Ct. at page 232. An action based on this doctrine clearly is unknown to the common law. The demand for trial by jury will be stricken. Other issues raised by counsel may be conveniently disposed of at trial.

Submit order.