Joseph LUCAS, Jr.

v.

PHILCO–FORD CORPORATION and Radio & Television Workers Local No. 101, of the International Union of Electrical, Radio and Machine Workers, AFL–CIO.

Civ. A. No. 73–291.

United States District Court, E. D. Pennsylvania.

Aug. 15, 1974.

Harold I. Goodman, Philadelphia, Pa., for plaintiff.

Leonard M. Sagot, Robert M. Landis, Philadelphia, Pa., for defendant.

---

OPINION

DITTER, District Judge.

INTRODUCTION

Plaintiff, Joseph Lucas, Jr., brought this action against Philco-Ford Corporation (the company), his former employer, and Radio and Television Workers Local No. 101, of the International Union of Electrical, Radio, and Machine Workers, AFL–CIO (the union), his union local. He alleges that he was wrongfully discharged by the company, that the union failed fairly to represent him, and that the company and union acted in concert to injure and harass him. He prays for damages and equitable relief.

1. In his amended complaint, plaintiff avers that the union failed to fairly represent him as "reprisal and retaliation" for his cam-

Jurisdiction is founded upon Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and Section 102 of the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 412.

Presently before the court are the motions of both defendants for summary judgment pursuant to Rule 56, Fed.R. Civ.P., and the defendant union's motion, pursuant to Rule 39(a)(2), Fed.R. Civ.P., to strike plaintiff's demand for a jury trial. For the reasons expressed herein, the company's motion for summary judgment will be granted, and both of the union's motions will be denied.

Despite inconsistent accounts and markedly different interpretations of pertinent incidents, some important facts are well crystallized: Plaiintiff was employed by Philco-Ford in various capacities from September, 1952, until early March of 1972, when he was terminated for refusal to accept overtime assignments. During the course of his employment he was a member in good standing of the defendant union local, and, in fact, ran unsuccessfully for its presidency in September, 1971.[1]

Article VII of the collective bargaining agreement between defendants establishes a grievance and arbitration procedure for the resolution of all differences and disputes under the terms of their contract. The procedure contains five grievance steps, the final one involving a submission to the American Arbitration Association. Article II of the collective bargaining agreement establishes certain basic policies regarding overtime work assignment and provides, inter alia, in subsection (c) that "[e]mployees will be excused from working overtime only for reasonable reasons."

From September, 1971, until his dismissal some six months later, plaintiff declined numerous overtime work assignments. What reasons he gave to his

paign against the incumbent president by whom plaintiff was defeated.

superiors for these refusals is disputed.[2] Plaintiff's refusals persisted despite two written warnings in January, 1972, and a five-day disciplinary furlough in February, 1972. On March 3, 1972, he was discharged.

Thereafter, plaintiff filed a grievance, and the procedure established by the collective bargaining agreement was set into motion. The first three steps of the five-step procedure were utilized swiftly. Plaintiff contends that thereafter the union failed or refused to represent him fairly. In his supplementary affidavit, William Mandia, the president of the local, states that on three occasions since 1965 the union has taken the issue of what constitutes a "reasonable reason" within the meaning of Article II to final and binding arbitration. In each instance, the company's position was sustained and the grievance was denied.

After the institution of the present action, the company and the union offered to submit the question of the propriety of plaintiff's discharge to the American Arbitration Association for a final and binding decision. Plaintiff contends that because he viewed the proposed arbitration as coming a year too late, and then only in an attempt to avoid this litigation, he steadfastly refused to agree. His attorney, Steven A. Hyman, Esquire, however, did discuss the possibility of arbitration with defendants' attorneys on numerous occasions, and participated with the union's counsel in the selection of an impartial arbitrator. Mr. Hyman asserts that in so doing he merely was attempting to convince his client of the union's sincerity and to protect plaintiff's interests

should he later decide to accept arbitration. In any event, an arbitration hearing was scheduled for June 4, 1973. On May 10, 1973, Mr. Hyman advised the union that plaintiff would not participate in the hearing and indicated that plaintiff was prepared to seek to enjoin it. The hearing thereafter was cancelled.

## MOTION OF THE COMPANY FOR SUMMARY JUDGMENT

Philco-Ford has moved for summary judgment on the ground that since plaintiff has failed to utilize and exhaust the grievance and arbitration procedure contained in Article VII of the collective bargaining agreement, the sole remedy contemplated by the contract for the wrongs alleged here, his action, at least against the company, is barred. On two conditions, which I shall set forth presently, I agree.

It is well settled that if a wrongfully discharged employee resorts to the courts before grievance procedures authorized by the collective bargaining agreement have been fully utilized, the employer may defend on the ground of failure to exhaust contractual remedies.[3] Vaca v. Sipes, 386 U.S. 171, 184, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967); cf. Rothlein v. Armour & Company, 391 F. 2d 574 (3rd Cir. 1968). However, the Supreme Court has recognized certain instances where these contractual remedies may prove unsatisfactory or unworkable for the individual grievant, Vaca v. Sipes, supra, 386 U.S. at 185, 87 S.Ct. at 914, including the situation where the union has sole power under the terms of the contract to invoke the

2. Certain members of the union have stated that the plaintiff refused to work overtime because he desired to be with his family. Plaintiff, however, contends that he made clear that his refusals also grew out of his belief that working overtime would exacerbate certain abdominal and gall bladder symptoms from which he was suffering. Both versions find some support in the pleadings, motions, affidavits, and exhibits before the court.

3. The rationale for insisting that the employee at least attempt to exhaust exclusive grievance and arbitration procedures established by the bargaining agreement lies in the fact that since the employee's claim is based upon breach of that agreement, he is bound by its terms regarding the enforcement of his rights. Vaca v. Sipes, 386 U.S. 171, 184, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967).

higher stages of the grievance procedure. The Court in *Vaca* stated:

It is true that the employer in such a situation may have done nothing to prevent exhaustion of the exclusive contractual remedies to which he agreed in the collective bargaining agreement. But the employer has committed a wrongful discharge in breach of that agreement, a breach which could be remedied through the grievance process to the employee-plaintiff's benefit were it not for the union's breach of its statutory duty of fair representation to the employee. To leave the employee remediless in such circumstances would, in our opinion, be a great injustice. We cannot believe that Congress, in conferring upon employers and unions the power to establish exclusive grievance procedures, intended to confer upon unions such unlimited discretion to deprive injured employees of all remedies for breach of contract. Nor do we think that Congress intended to shield employers from the natural consequences of their breaches of bargaining agreements by wrongful union conduct in the enforcement of such agreements. Cf. Richardson v. Texas E. & N. O. R. Co., 242 F.2d 230, 235–236 (C.A. 5th Cir.).

386 U.S. at 185–186, 87 S.Ct. at 914.

█ The present situation is quite unlike that posited by the Court in *Vaca*. Here, when it became aware that the plaintiff wanted to pursue matters beyond the third grievance step the company showed its willingness to be bound by the collective bargaining agreement even though the time limitation requirements had long since expired. Thus, even if it be assumed that the union's failure to call on the company to arbitrate was wrongful, it is nevertheless true that the company is willing to forego whatever advantage it may have gained thereby. As *Vaca* points out, an order compelling arbitration of the underlying dispute is one of the available remedies to a court when the breach of a union's duty of fair representation is proved. 386 U. 196, 87 S.Ct. 920. The company's agreement, even in the absence of such proof, makes trial as to the company unnecessary.

Plaintiff acknowledges that at a meeting of his representatives and both defendants in early March, 1973, the defendants agreed to submit his claim to arbitration. He contends that he refused to participate because he believed that the company made this offer only to prevent the union's conduct from becoming public knowledge. This unsupported contention, which hints at some improper agreement between company and union, cannot overcome the long-standing federal labor policy recognizing, and deferring to, the arbitration process as a keystone to resolving disputes and maintaining industrial peace. John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); United Steelworkers v. American Mfg. Co., 363 U.S. 564, 80 S. Ct. 1343, 4 L.Ed.2d 1403 (1960). Whatever claims plaintiff may legitimately pursue against the union with respect to its diligence and zeal, plaintiff's claim against the company is untenable in view of its present willingness to arbitrate, though no longer bound by the contract to do so.

█ While I am not unmindful that caution and restraint must be exercised in the granting of summary judgment, Season-All Industries, Inc. v. Turkiye Sise Ve Cam Fabrikalari, 425 F.2d 34 (3d Cir. 1970), a party cannot rest on the allegations contained in his complaint in opposition to a properly supported motion for summary judgment, First Nat. Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592–1593, 20 L.Ed.2d 569 (1968); Sears, Roebuck and Co. v. Jardel Co., 421 F.2d 1048, 1053 (3d Cir. 1970). Rather, he must submit sufficient evidence supporting a claimed factual dispute to demonstrate that a judge or jury is required to resolve the parties' differing versions of the truth at trial. First Nat. Bank of Arizona v. Cities Service

Co., supra, 391 U.S. at 289, 88 S.Ct. at 1592. With respect to the defendant company, plaintiff has failed to meet that burden. His claims of a company-union conspiracy and bad faith on the part of the employer have neither been detailed nor supported.

Nevertheless, in order to ensure absolute fairness to the plaintiff in the resolution of his dispute with the company, my grant of summary judgment to it is subject to two conditions. First, the company must submit the question of the legality of plaintiff's discharge to binding and final arbitration under the auspices of the American Arbitration Association and before an arbitrator acceptable to the plaintiff. Second, the company must permit the plaintiff, if he so chooses, to argue the merits of his grievance either himself or through his own attorney entirely without the assistance of the union or its counsel. Accordingly, subject to its agreement to these conditions, the company's motion for summary judgment will be granted.

## MOTION OF THE UNION FOR SUMMARY JUDGMENT

Defendant union moves for summary judgment on three grounds: (1) plaintiff's failure to exhaust his intra-union remedies; (2) plaintiff's failure to demonstrate that the union was arbitrary, discriminatory, or unfair in its representation of him; and (3) plaintiff's failure to participate in final and binding arbitration.

■ In this Circuit the requirement of the Labor-Management Reporting and Disclosure Act[4] that intra-union remedies must be exhausted before resorting to the courts has consistently been held to lie within the discretion of the trial judge. Semancik v. United Mine Workers of America Dist. No. 5, 466 F.2d 144 (3d Cir. 1972).

■ Among those situations[5] where the court may refuse to require exhaustion is when resort to the union's remedies would be futile or fail to provide adequate relief. Foy v. Norfolk, 377 F. 2d 243, 246 (4th Cir. 1967); Detroy v. American Guild of Variety Artists, 286 F.2d 75, 81 (2d Cir. 1961), cert. denied, 366 U.S. 929, 81 S.Ct. 1650, 6 L.Ed.2d 388; Bradley v. Local 119, International Union of Electrical, Radio and Machine Workers, 236 F.Supp. 724, 728 (E.D.Pa. 1964). I believe that in the instant case the remedy accorded by the union would indeed be inadequate. The union's memorandum of law sets out in detail the procedure established in the International Constitution for the consideration of a charge against a member or officer of a local union. Utilization of this procedure would require plaintiff to file a charge with the union local against the members or officers alleged to have acted wrongfully. The charge would then be considered by a seven-member trial board, from which the charging party could appeal to the general membership or the District Council, the intermediate body of the union. Alternatively, since plaintiff's allegations involved a violation of the I.U.E. Code of Ethics, plaintiff could petition the International Executive Board to accept original jurisdiction of the charge itself. Pursuing either avenue, however, leads to the discipline of an offending union officer or member, rather than to damages for an

---

4. 29 U.S.C. § 411(a)(4) states in relevant part that:

No labor organization shall limit the right of any member thereof to institute an action in any court, . . . irrespective of whether or not the labor organization or its officers are named as defendants . . . Provided, That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organization or any officer thereof . . .

5. For a fuller discussion of circumstances when waiver of the exhaustion requirement might be appropriate, see Semancik v. United Mine Workers of America Dist. No. 5, 466 F.2d 144, 150–151 (3d Cir. 1972).

injured plaintiff. The union contends that:

a fine levied against the offending party or parties in an amount payable to plaintiff in order to make him 'whole' would be neither beyond the definitional boundaries of the word 'discipline' nor inconceivable in light of the IUE's rigorous enforcement of its Code of Ethics. (Memorandum of Union in Support of its Motion for Summary Judgment at 16–18.)

Nevertheless, I am unpersuaded. The sanctions which ultimately might fall upon the union members alleged to have injured plaintiff are, in my view, unsatisfactory and inadequate to compensate plaintiff fully for the wrongful hardships and consequential damages he claims to have sustained.

█ █ The union's second argument also lacks merit. In order to prevail on his claim of arbitrary or bad faith conduct on the part of the union, plaintiff admittedly must overcome a heavy burden. He must show "substantial evidence of fraud, deceitful action or dishonest conduct." Amalgamated Association of Street, Electric Railway & Motor Coach Employees v. Lockridge, 403 U.S. 274, 299, 91 S.Ct. 1909, 1924, 29 L.Ed.2d 473, reh. denied, 404 U.S. 874, 92 S.Ct. 24, 30 L.Ed.2d 120 (1971); Humphrey v. Moore, 375 U.S. 335, 348, 84 S.Ct. 363, 371, 11 L.Ed.2d 370, reh. denied, 376 U.S. 935, 84 S.Ct. 697, 11 L.Ed.2d 655 (1964); see also Vaca v. Sipes, supra, 386 U.S. at 193, 87 S.Ct. at 918. However, the documents before the court relating to the propriety of the union's representation of plaintiff reveal a number of disputed material issues, thus making summary judgment totally inappropriate in this case. Among the contested issues, all of which must be resolved by a finder of fact, are whether plaintiff indicated, in the presence of several union officials, that gastric and gall bladder problems prevented his working overtime; whether the union encouraged plaintiff to file timely grievances regarding his five-day suspension; whether plaintiff acquiesced in the union's failure to pursue his claim with vigor; whether plaintiff was accurately advised of the possible benefits of pursuing the avenue of arbitration and the implications of accepting his severance pay; and whether the union's failure to prosecute plaintiff's grievance was grounded in the genuine belief that to do so would be futile since in other cases of refusals to work overtime the company had prevailed.

█ Finally, while plaintiff's refusal to participate in final and binding arbitration is sufficient to warrant granting summary judgment for the company, the same cannot be said to be true with respect to the union. Plaintiff's claim against the company—for wrongful dismissal—and the appropriate remedy therefore—reinstatement and payment of back wages—can fairly and adequately be adjudicated in an arbitration proceeding. His claim against the union—for breach of its duty fairly to represent him—and the appropriate remedy for such action—damages—can, however, only be resolved in a court of law. If the union did indeed wrongfully fail to press plaintiff's claim until he instituted the present litigation, he surely cannot be estopped from recovering against the union for damages he sustained by the breach of its plain duty to him.

For the foregoing reasons, the union's motion for summary judgment must be denied.

## MOTION OF THE UNION TO STRIKE PLAINTIFF'S DEMAND FOR JURY TRIAL

Defendant union has moved, pursuant to Rule 39(a)(2), Fed.R.Civ.P.,[6] to

---

6. That rule provides:

When trial by jury has been demanded as provided in Rule 38, the action shall be designated upon the docket as a jury action. The trial of all issues so demanded shall be by jury, unless . . the court upon motion or of its own initiative finds that a right of trial by jury of some or all of those issues does not exist under the Constitution or statutes of the United States.

strike plaintiff's demand for a jury trial. Two Supreme Court decisions handed down just this year persuade me that this motion must be denied.

In Curtis v. Loether, 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974), the Court unanimously rejected the argument here proffered by the union that the Seventh Amendment is inapplicable to causes of action arising from statutes.[7] *Curtis* involved a suit for damages for violation of the fair housing provisions of the Civil Rights Act of 1968. The Court held that such an action, if viewed properly as one for damages only, is a legal claim requiring a jury trial on the demand of either party, and if the legal claim is joined with an equitable claim, the right to trial by jury on the legal claim, including all issues common to both claims, remains intact. 415 U.S. at 195–198, 94 S.Ct. at 1009–1010.

Two months later, in Pernell v. Southall Realty, 416 U.S. 363, 94 S.Ct. 1723, 1729, 40 L.Ed.2d 198 (1974),[8] the Court repeated the thrust of *Curtis, supra,* that the Seventh Amendment "requires trial by jury in actions unheard of at common law, provided that the action involves rights and remedies of the sort traditionally enforced in an action at law." See also Dairy Queen, Inc. v. Wood, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962), cited approvingly in Curtis v. Loether, supra; Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959).

In support of its motion the union relies on Brady v. Trans World Airlines, Inc., 196 F.Supp. 504 (D.Del.1961), affirmed, 401 F.2d 87 (3d Cir. 1968), cert. denied, 393 U.S. 1048, 89 S.Ct. 681, 684, 21 L.Ed.2d 691 (1969), reh. denied, 394 U.S. 955, 89 S.Ct. 1272, 22 L.Ed.2d 492, wherein the district court denied a jury trial to a plaintiff suing his union and employer for discharging him allegedly in violation of the Railway Labor Act. The court there grounded its decision on two points: (1) the primary relief sought by plaintiff, reinstatement, was equitable in nature, while the punitive damages prayed for were unobtainable and other monetary compensation requested was incidental; and (2) the statutory mandates of the Railway Labor Act respecting union security do not embrace actions at common law and are outside the scope of the Seventh Amendment. Although I believe *Brady* arguably is distinguishable as a suit entirely in equity, to the extent that it conflicts with Curtis v. Loether, supra, it obviously no longer is controlling.

■ In the case at bar, plaintiff is seeking relief both at law and in equity. Predicating jurisdiction upon Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and Section 102 of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 412, he alleges breach of contract, interference with contractual relationship, and conspiracy to harm him as against one or both defendants. He has requested monetary damages, both in the form of an accounting for all lost income, and a request for compensation for all other damages proximately caused him by defendants, and for injunctive relief against further injury by defendants. Under Curtis v. Loether, supra, plaintiff is entitled to trial by jury on his legal claims, including all issues common to both the legal and equitable claims. The union's motion to strike plaintiff's demand for a jury trial is therefore denied.

7. The Court stated:

   Although the thrust of the Amendment was to preserve the right to jury trial as it existed in 1791, it has long been settled that the right extends beyond the common-law forms of action recognized at that time.

8. In *Pernell* a landlord sought to evict its tenant from the premises for alleged non-payment of rent under the statutes of the District of Columbia. The Court held that since the right to recover possession of real property was a right protected at common law from the latter half of the 12th century, any party involved in a proceeding to recover possession under the D.C. statutes is entitled to trial by jury.