Robert STEELE et al., Plaintiffs,

v.

BREWERY AND SOFT DRINK WORKERS LOCAL 1162, and Falstaff Brewing Corporation, Defendants.

Civ. No. F 76–142.

United States District Court,
N. D. Indiana,
Fort Wayne Division.

April 18, 1977.

Grant F. Shipley, Fort Wayne, Ind., for plaintiffs.

David B. Keller, Fort Wayne, Ind., Barry A. Murphy, San Francisco, Cal., Edward J. Fillenwarth, Jr., Chris C. Anderson, Indianapolis, Ind., Thomas S. Locke, Fort Wayne, Ind., for defendants.

## MEMORANDUM OF DECISION AND ORDER

ESCHBACH, District Judge.

This cause is before the court on the defendant union's motion to strike and motions to dismiss or, in the alternative, for summary judgment. For the reasons given below, the defendant's motion to dismiss will be granted in part and denied in part; the defendant's motion for summary judgment will be denied. The plaintiffs will be ordered to file a more definite statement of portions of their complaint within twenty days of the entry of this order. Count II of the complaint will be dismissed for failure to state a claim upon which relief can be granted.

This is an action for damages for an alleged breach of the union's duty of fair representation and breach of its contract with plaintiffs, as well as for damages arising from the breach of a collective bargaining agreement. Plaintiffs have demanded jury trial on these issues. The defendant union has moved to strike plaintiff's jury demand. In this motion, the defendant union does not appear to question plaintiffs' right to a jury trial on the contract issues. The question here is whether plaintiffs are entitled to a right to jury trial on the fair representation claims.

The defendant relies primarily on *Harrison v. Chrysler Corp.,* 60 F.R.D. 9 (S.D.Ind. 1973), and a recent reaffirmation of *Harrison* in *Davidson v. Internat'l Brotherhood of Teamsters,* Civil No. IP 76–141–C (S.D. Ind., February 9, 1977). These decisions hold that a claim for breach of a union's duty of fair representation is equitable in nature and hence does not give rise to a right to jury trial.

This issue has given rise to a sharp division of authority. Reported decisions consistent with the result in *Harrison* are *Brady v. Trans World Airlines, Inc.,* 196 F.Supp. 504 (D.Del.1961), *aff'd,* 401 F.2d 87 (3d Cir. 1968), *cert. denied,* 393 U.S. 1048, 89 S.Ct. 680, 21 L.Ed.2d 691 (1969); and *Nedd v. Thomas,* 316 F.Supp. 74 (M.D.Pa.1970).

372

Contrary to *Harrison* are *Minnis v. International Union, UAW,* 531 F.2d 850 (8th Cir. 1975); *Rowan v. Howard Sober, Inc.,* 384 F.Supp. 1121 (E.D.Mich.1974); and *Lucas v. Philco-Ford Corp.,* 380 F.Supp. 139 (E.D.Pa. 1974). Particularly since *Harrison* was decided without benefit of the subsequent decisions in *Curtis v. Loether,* 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974), and *Pernell v. Southall Realty,* 416 U.S. 363, 94 S.Ct. 1723, 40 L.Ed.2d 198 (1974), this question deserves close examination.

The duty of fair representation is a judicially developed doctrine based upon a construction of various federal labor statutes. *See Rowan, supra* at 1124.

■ As the United States Court of Appeals for the Seventh Circuit observed in *Rogers v. Loether,* 467 F.2d 1110, 1116 n.23 (7th Cir.), *aff'd sub nom., Curtis v. Loether, supra,* the origin of the duty sought to be enforced, whether in statute, contract, or the common law, does not control the seventh amendment's application. The test is not, as *Harrison* and *Brady* saw it, whether the specific claim was itself "known" to the common law. Rather, it must be asked whether closely analogous rights and remedies were recognized by the common law. *See, e. g., Pernell, supra,* 416 U.S. at 369–83, 94 S.Ct. 1723. Although not every claim for monetary relief is necessarily a claim for "legal" relief, that the relief sought is the traditional form of relief offered at law is apparently a highly persuasive indication that the Seventh Amendment attaches. *See Curtis, supra,* 415 U.S. at 195–96, 94 S.Ct. 1005. The fact that equitable relief may also be sought based upon the same claim is of no apparent consequence. *See id.* at 196 n.11, 94 S.Ct. 1005; *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959).

■ The court in *Curtis* thought it significant that the action under consideration therein—a housing discrimination claim—essentially sounded in tort. 415 U.S. at 195, 94 S.Ct. 1005. At least one court has observed that an action for breach of the duty of fair representation is, like a tort or a contract action, one for redress of a viola-

tion of a personal right. *See Rowan v. Howard Sober, Inc.,* 384 F.Supp. 1121 (E.D. Mich.1974). Insofar as analogy is a guide, the instant action is sufficiently comparable to a traditional legal action to mandate a jury determination. Nor, considering the practical abilities and limitations of jurors, are the issues in this sort of action so extraordinarily complex as to preclude a jury determination. Cases far more complex than this have been and, on demand, must be tried to a jury in the federal courts.

The court concludes that the better view is that the duty of fair representation gives rise to a right to jury trial. Partly because the right itself is so precious, every reasonable presumption should be indulged in its favor. Hence, the defendant union's motion to strike will be denied.

The union also moves to dismiss the action or, in the alternative, for summary judgment. The union's motion first addresses paragraphs 5 through 45 of the complaint. The union's contention is that the claims made therein are barred for failure of the plaintiffs to exhaust internal grievance procedures. *See Republic Steel Corp. v. Maddox,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965).

■ Paragraphs 5–45 of the complaint allege a failure by defendant Falstaff and the union to take action on the plaintiffs' requests for medical transfer, as provided by the collective bargaining agreement; it is also alleged that the union failed to bargain with the company on behalf of the plaintiffs toward retention of the delivery department. The plaintiffs point out that the latter allegation involves a "pure" question of fair representation, as opposed to breach of a collective bargaining agreement. There being no labor agreement covering the subject matter, there is nothing to submit to the grievance procedure. Of course, employees in the position of the plaintiffs, who seek to enforce the union's duty to represent them fairly, are required to exhaust whatever internal union remedies exist. *See Fingar v. Seaboard Air Line R. R. Co.,* 277 F.2d 698 (5th Cir. 1960). In

this case, however, the plaintiffs allege that no such procedure exists. The union does not dispute this. Hence, the claim of a failure to bargain is unaffected by the "exhaustion" principle.

The remaining allegations of paragraphs 5–45 are based upon a breach of contract. Allegedly, the bargaining agreement herein provides for medical transfer of an employee without loss of seniority. The plaintiffs recognize the ordinary rule that where such a duty is imposed upon an employer, and made enforceable by the union, the employee must exhaust the available grievance procedures. *See Maddox, supra.* The plaintiffs concede that they filed no grievance prior to filing the instant complaint, although they have done so since the union filed its motion to dismiss.

However, the plaintiffs argue forcefully that the *Maddox* rule is inapplicable here, given the futility of the grievance procedure under these particular circumstances. The collective bargaining agreement provides, in sections 5(c) and 6(a) of Article II, for medical transfer. However, this right is expressly conditioned, by section 6(c), upon "union approval before a transfer can be initiated." The plaintiffs interpret this provision to mean that before the *company* can act on a medical transfer request there must be union approval. The plaintiffs allege that they notified the company of their request, and that the company in turn notified the union. Allegedly, the union took no action. Thus, the plaintiffs contend that no action on the requests could be expected from the company; and that therefore there was nothing about which a grievance could be made. In these circumstances, the plaintiffs argue that any grievance would have been futile and that therefore the exhaustion of grievance procedures should not be required under the rule in *Desrosiers v. American Cyanamid Co.*, 299 F.Supp. 162 (D.Conn.1969).

The court observes that the plaintiffs' interpretation of the procedure to be followed under section 6(c) is not inescapable. That section might well mean that an *employee* must have prior union approval before he submits ("initiates") a medical transfer. Under this interpretation, the proper procedure might well be for an employee to secure union approval and submit this to the company with his request. If this is the proper procedure, it may well be that the plaintiffs' claim is barred for failure to preserve the right to a transfer.

Since the proper interpretation of the contract here may well turn on a showing of industry custom, this court is unable to resolve the question at this posture of the litigation. Assuming for the moment that the plaintiffs' interpretation of section 6(c) is the correct one, it must be asked whether exhaustion of grievance procedures should be required in the circumstances alleged.

■ The court notes at the outset that there is some irony in the plaintiffs' position. The plaintiffs have informed the court that, subsequent to the filing of this motion, they filed grievances on this matter against the company, that the company denied the transfer requests, and that the union has taken the issue to arbitration. Hence, their argument that a grievance would have been futile seems misplaced. It may be, however, that in processing the recent grievance, the company departed from the procedures called for by the contract. If so, the company's present action would not necessarily undercut the plaintiffs' "futility" argument.

The union asserts that the plaintiffs, in declining to pursue a grievance, relied on the mere possibility that the company would assert section 6(c) as a defense. The anticipation of a defense, according to the union, should not relieve an employee of his obligation strictly to follow the grievance procedure established by contract. Surely this is correct. However, the plaintiffs' argument is not that they believed they would lose the grievance but that technically a grievance would have been a nullity since there was no company action or inaction to grieve.

Accepting the plaintiffs' interpretation of section 6(c) as correct, for the time being, the court agrees that there was, in a technical sense, no basis for a grievance. In a

technical sense, therefore, no grievance should be required under such circumstances. The remaining and apparently dispositive issue is whether such a technical approach should be taken with respect to the exhaustion requirement.

Given the pervasiveness of the grievance as the customary vehicle through which labor relations disputes are processed in the first instance, it might be argued that, even where technically improper, a grievance should nonetheless be required. That is, the grievance procedure might be regarded as the proper vehicle for channeling disputes to a resolution, even where the dispute is not grievable. This approach would normally be consistent with the expectations of the parties, who most probably assume that disputes are grievable.

■ Apparently, the exhaustion requirement has not been so construed, however. It has been required that every technical requirement imposed by the contract itself be complied with. *See, e. g., Hubicki v. ACF Industries, Inc.*, 484 F.2d 519 (3d Cir. 1973) (provision requiring grievance to be in writing). Yet, this court has found no case requiring exhaustion of grievance procedures in circumstances where no grievance is contemplated by the contract. It is the exhaustion of *contractual* remedies which triggers the employee's right to sue. *Cf. Waters v. Wisconsin Steel Works of International Harvester Co.*, 427 F.2d 476, 489 (7th Cir.), *cert. denied*, 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151 (1970). The plaintiffs have properly stated a claim with respect to which resort to the contractual grievance procedure would have been futile.

■ Were there no allegation that the company had notified the union of the plaintiffs' transfer request, the court would nonetheless dismiss this claim. The exhaustion requirement is at least partially based upon the policy that before a union may be sued for failure to properly represent an employee, the employee must give the union a fair opportunity to do so. Absent notice, no claim could be maintained. However, the plaintiffs here allege that the union, having received notice of the transfer request, failed to act. This claim satisfies the requirements of exhaustion.

The defendant union contends that the plaintiffs should have made a demand upon the union to act upon their transfer requests. However, the defendant has not shown that such a demand was necessary to provide the union with proper notice; nor has the defendant cited any contract provision that requires such a demand. Thus, it cannot be said at this point that a demand is essential to maintenance of these claims.

■ The union argues also that plaintiffs have failed to allege any "facts" indicating bad faith on the part of the union with respect to the union's alleged inaction on the transfer requests. This court is of the opinion that in circumstances such as these, dismissal for failure to plead "facts" is improper. However, the plaintiffs will be ordered to file a more definite statement of these allegations (paragraph 32 of the complaint) within twenty days of the entry of this order.

■ Finally, the defendant contends that the claims relating to medical transfers are now moot, since the dispute is under arbitration. No doubt the claims may be rendered partially moot by subsequent events. However, as the plaintiffs point out, they seek lost wages arising from failure to act on their transfer requests when first submitted. Reinstatement would not moot the claim for lost wages. Hence, the motion to dismiss paragraphs 5–45 of the complaint will be denied. Plaintiffs will be ordered to file a more definite statement of their claim that the union's alleged inaction on their transfer requests was in bad faith (paragraph 32 of the complaint).

■ The union seeks to dismiss paragraphs 46–49 of the complaint for failure to state a claim. Apparently conceding that an action will be for a union's perfunctory handling of a grievance, the defendant objects that the characterization of its conduct as "perfunctory," "discriminatory," or "arbitrary" is supported by no "facts." The federal rules do not require fact pleading.

The complaint surely states a claim, however conclusory. The plaintiff will be ordered to file a more definite statement of paragraphs 46–49 of the complaint within twenty days of the entry of this order.

■ Defendants next challenge paragraphs 50–58 of the complaint. The allegations made in this portion of the complaint relate to the claimed "retained seniority" of plaintiffs Steele, Kruse and Brunner. Under Article II, section 1(b) of the agreement, employees in production who are promoted to "local supervisory and sales positions" retain seniority in production. Hence, if laid off from a "sales" position, such employees can return with their retained seniority to the production unit. Although the question of timeliness of the grievance filed by plaintiff Steele is raised in an affidavit, the defendant union makes no specific contention that his claim is barred thereby. The defendant also does not here dispute the plaintiffs' contention that Steele's grievance was sufficient to preserve the rights of Kruse and Brunner. The union seeks summary judgment, however, on the grounds that the question was fully investigated and it was determined that the plaintiff "route salesmen" were not holders of "local supervisory and sales positions" within the meaning of the contract. Hence, an interpretation of the contract is involved in this case. The plaintiffs have offered evidence in support of their contention that the retained seniority provision applies to them. Mindful of the Seventh Circuit's admonition that where "the contract in issue is not unambiguous on its face, it is necessary for the district court to consider all the circumstances that gave rise to its existence before attempting to interpret it", *Buschmann v. Professional Men's Assoc.*, 405 F.2d 659, 663 (7th Cir. 1969), this court declines to resolve this issue on summary judgment.

■ The defendant contends that the proper construction of Article II, § 1(b) of the collective bargaining agreement is irrelevant to the ultimate question of whether the defendants made a good faith investigation of the grievance. However, the meaning of a contract is surely relevant to the question of the good faith of one bound to enforce it. Hence, the interpretation of the contract is a disputed material issue in the case. Moreover, although the defendant contends that it has "shown its complete good faith" herein, such an issue is entirely inappropriate for resolution on summary judgment.

■ Defendant next challenges paragraphs 59–62 of the complaint, construing these paragraphs as alleging a conspiracy between union and management for which there is no federal remedy. However, these paragraphs may as easily be interpreted as an allegation that the union induced Falstaff not to rehire plaintiffs. Construing the complaint in favor of plaintiffs, these allegations surely state a claim or serve to bolster other claims. The defendant's motion will be denied.

Count II of the complaint is challenged for lack of jurisdiction. In view of the court's conclusion that there is jurisdiction over the federal claims stated in count I, there is pendent jurisdiction over count II, and count II is properly before the court.

Count II is a claim under an Indiana statute, Ind.Code §§ 22–7–2–1 *et seq.* (Burns 1974), which gives a union member a right to enforce union rules and by-laws. The defendant asserts that this statute, to the extent incompatible with federal labor law, is preempted.

There can be no doubt that certain claims under state labor law must fall if they contravene the national labor policy. Claims under union constitutions and by-laws, enforceable as contracts under state law, have presented difficult questions of preemption. *See, e. g., International Ass'n of Machinists v. Gonzales*, 356 U.S. 617, 78 S.Ct. 923, 2 L.Ed.2d 1018 (1958); *Motor Coach Employees v. Lockridge*, 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971). *Gonzales* was an action for reinstatement and damages alleging expulsion from the union in violation of its internal rules. *Lockridge* involved a claim under union rules by an employee discharged from em-

ployment at the union's request, under the union security clause of the collective bargaining agreement. In *Gonzales*, the state claim was upheld; in *Lockridge*, the state claim was held to be preempted.

■ Recently, the Supreme Court has expanded on the *Gonzales-Lockridge* distinction. *See Farmer v. Carpenters, Local 25*, 430 U.S. 290, 301 n. 10, 97 S.Ct. 1056, 1065, 51 L.Ed.2d 338 (1977). It seems clear from the Supreme Court's approval of the result in *Gonzales* that state claims based on internal union rules are not *per se* preempted by federal law. Hence, the Indiana statute under discussion here is not itself preempted. The question is whether the specific claim made here poses "a 'real and immediate' potential for conflict with the federal scheme". *Id.* As the Court made clear in *Lockridge*, it is "the conduct being regulated, not the formal description of governing legal standards, that is the proper focus of concern", since preemption is a safeguard against conflicting regulation of identical conduct. *Lockridge, supra*, 403 U.S. at 292, 91 S.Ct. at 1920.

■ The test to be applied, therefore, is whether the conduct asserted as the basis for the plaintiffs' claim under the union rules is otherwise subject to potentially conflicting federal regulation. As this complaint stands, the conclusion is inescapable that federally regulated conduct is the basis for the plaintiffs' state law claim. Paragraphs 67 through 126, the basis for count II, merely incorporate by reference paragraphs 5 through 64 of count I. The claim against the union in paragraphs 5 through 64 is for a breach of the duty of fair representation. The conduct said to constitute a breach of this duty is the identical conduct alleged as the basis for the state claim. In these circumstances, count II fails to state a claim, and the defendant union's motion to dismiss will be granted.