**Marshall NEIPERT**

v.

**ARTHUR G. McKEE & COMPANY and the Lehigh Valley District Council.**

**Civ. A. No. 76–1936.**

United States District Court,
E. D. Pennsylvania.

March 31, 1978.

Richard F. Stevens, Butz, Hudders & Tallman, Allentown, Pa., for plaintiff.

Patrick T. Ryan, Philadelphia, Pa., for McKee.

Charles W. Johnston, Jr., Harrisburg, Pa., for Lehigh.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

This is an action brought by plaintiff against his former employer, defendant Arthur G. McKee & Company (McKee) and against the Lehigh Valley District Council (the Council), an affiliate of the United Brotherhood of Carpenters and Joiners of America (the Brotherhood) of which plaintiff was a member. Plaintiff alleges that McKee's termination of plaintiff's employment on July 17, 1975, was in violation of the collective bargaining agreement between McKee and the Brotherhood, and that the Council, the collective bargaining representative of plaintiff as a millwright employed by McKee, breached its duty of fair representation. This action is brought pursuant to the Labor Management Relations Act of 1947, 29 U.S.C. § 185.

Plaintiff was employed by McKee as a millwright at its coke battery job at Bethlehem Steel in Bethlehem, Pennsylvania, since January of 1975. On the Monday following July 4, 1975, the "6th or 7th" according to plaintiff (that Monday was July 7), plaintiff was discharged by McKee, allegedly because of complaints about his work. Plaintiff immediately complained to the Council's Business Agent, John Kuzmiak. Kuzmiak and plaintiff met the next day to discuss the grievance and then they went to Bethlehem Steel to meet with officials of McKee. At the conclusion of this meeting, plaintiff was reinstated.

Plaintiff alleges "there was bad feeling as a result of his being reinstated", and that he was being closely watched. On July 17 he was again discharged, this time because he parked his car in a restricted area despite the fact that specific parking arrangements had been made for McKee employees. Plaintiff contends that he had never been explicitly informed that he was forbidden to park in that area, but that he had learned not to park there "from word around". Earlier in the day plaintiff had been told by a Bethlehem Steel employee to remove his car from that lot and he did so. That was the first direct information he had received as to removing his car from the lot, even though he had parked there perhaps a dozen times previously, occasionally with other drivers. He knew that other individuals had been warned not to park there, and were told the car could be towed and a towing charge imposed.

Following termination plaintiff contacted his union steward, who told him, without stating a reason, that nothing could be done. Plaintiff contacted Kuzmiak who investigated the matter, discussed it with supervisory personnel and the union steward, and informed plaintiff that he could not alter McKee's decision. He then asked Kuzmiak to take the matter to arbitration, and Kuzmiak indicated this would be a Council decision. Kuzmiak also noted that plaintiff could pursue other remedies such as an action before the National Labor Relations Board.

To pursue the matter further, plaintiff consulted Attorney Peter O'Brien, and O'Brien on July 28 forwarded a letter to the Council demanding arbitration. At the Council's regular monthly meeting on August 6, in which plaintiff was not permitted to participate, Kuzmiak informed the Council that plaintiff had been discharged and of O'Brien's demand for arbitration. He also indicated that he had investigated the matter thoroughly and in his opinion the discharge was justified. However, because of the nature of the grievance the Council decided to hear plaintiff. Thus, plaintiff was advised of the meeting to be held on September 3, and in a letter dated August 18 was told that his presence was requested.

Plaintiff attended the September meeting and was given an opportunity to

present his position and to respond to questions by members of the Council. He stated that he felt he was being treated differently than others who had violated the same rule, and said that this discrepancy was apparently the result of difficulty with a foreman. Plaintiff does not now indicate whether his contention that there was bad feeling following his prior reinstatement was aired at the meeting. At the conclusion of this meeting the Council voted not to pursue the grievance, it being of the opinion that McKee was justified in the discharge, and plaintiff was immediately notified of the discharge. However, plaintiff now contends that he was never informed by McKee of the reason for his discharge, was never told by Kuzmiak of the reason why he felt the discharge was justified and was never told by the Council of its rationale for the decision not to pursue the grievance.

■ Plaintiff admits that prior to the institution of this action he never filed an appeal pursuant to Section 57, G of the Constitution and Laws of the United Brotherhood of Carpenters and Joiners of America, which provides:

"Any member, or any Local Union, District, State or Provincial Council having any grievance may appeal to the General President within thirty (30) days from the date the grievance occurred. All protests directed to the conduct of nominations or elections, or election procedures, in any subordinate body may be appealed to the General President within thirty (30) days from the date of the election. All grievances and election protests shall be in writing and shall contain a brief statement of the grounds relied upon. Decisions of the General President on protests directed to the conduct of nominations or elections, or election procedures, shall be final. Decisions of the General President on grievances may be appealed to the General Executive Board, whose decision shall be final. Also, decisions of the General President on grievances may be appealed to the General Executive Board, whose decision shall be final. Also, deci-

sions of the General Executive Board in all cases involving geographical jurisdiction, mergers, consolidations, and formation of Councils shall be final."

The Council contends that plaintiff, having failed to exhaust his intra-union remedies, is barred from bringing this action.

As a general rule, a union member charging unfair representation must exhaust such available remedies before he may bring an action against a union. *Brady v. Trans World Airlines,* 401 F.2d 87 (3d Cir. 1968), *cert. denied,* 393 U.S. 1048, 89 S.Ct. 680, 21 L.Ed.2d 691 (1969); *Gainey v. Brotherhood of Railway & Steamship Clerks,* 313 F.2d 318 (3d Cir. 1963); *Hubicki v. ACF Industries, Inc.,* 484 F.2d 519 (3d Cir. 1973). Plaintiff contends that because he was never informed of the rationale for the discharge or for the decision of the Council not to pursue the discharge grievance, any further effort on his part would be futile. In *Brady v. Trans World Airlines, supra,* at 104, the Court declared:

"* * * Mr. Brady's argument that it would have been futile to ask the IAM to review its own dealings with him is not tenable for IAM's internal procedure provided reasonably prompt review of his contentions on union levels higher than those responsible for the decisions against him."

For exactly that reason, we cannot accept plaintiff's contentions because such appeal would have given rise to review of his contentions on union levels higher than those responsible for the decision against him. He could have reasserted his contentions regarding his discharge and raised the issue of the peremptory conduct of the Council and its refusal to disclose its rationale. In other words, he could have appealed both the refusal of the Council to process the grievance and the manner in which this refusal was effected. This he failed to do.

Additionally, we cannot accept the contention by plaintiff that appeal would have been meaningless because the remedy available to the aggrieved employee would not have redressed the wrong committed. Failure to exhaust intra-union remedies and

procedures may not bar resort to a civil action when a plaintiff can demonstrate that the procedures lack a remedy tailored to the particular complaint and which would be of assistance to the plaintiff. *Lucas v. Philco-Ford Corporation*, 380 F.Supp. 139 (E.D.Pa.1974), *Yeager v. C. Schmidt & Sons, Inc.*, 343 F.Supp. 927 (E.D.Pa.1972), *renewed motion denied*, 355 F.Supp. 332 (E.D.Pa.1973).

Presently before the Court is a motion for summary judgment by the defendants, in the consideration of which we are guided by F.R.C.P. 56(c), which provides in part:

"Motion and Proceedings Thereon. * * The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. * * * "

Before the Court are affidavits and depositions. This evidence establishes that an appeal procedure is available, and not overly burdensome to an employee. In fact, according to the affidavit of William Sidell, there is no formality involved in appeals, and a simple letter will suffice. Thereafter, an objective investigation of such grievances is undertaken and decisions issued upon completion of the investigation. The Sidell affidavit further indicates that such appeals are filed frequently, suggesting that appeals are well within reach of Union members.

Thus, we find this situation distinct from that in *Lucas,* wherein the Court determined that the appeals procedure provided only for sanctions to be imposed upon the offending official, but not for redress of the alleged wrongdoing. In such a circumstance, it would be an injustice to require the aggrieved plaintiff to go through such procedures as a prerequisite to instituting proceedings since such procedures would not provide him with a workable remedy for the wrong imposed. In the instant case, the procedure would supply such a remedy. It would not be an injustice to require

utilization of this procedure prior to suit. To so require is to "forestalls judicial interference with the internal affairs of a labor organization until it has had at least some opportunity to resolve disputes concerning its own legitimate affairs." *Brady v. Trans World Airlines, Inc., supra,* at 104.

We also find that there is no issue of material fact. In so doing we are guided by F.R.C.P. 56(e), which provides in part:

" * * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

Plaintiff in this case has supplied no facts to refute those set forth by the Council in its motion. Plaintiff vaguely suggests that Section 57 G "appears to provide for discipline of the officers, representative (sic) and agents of the union who act improperly. It does not appear to provide any remedy to the Plaintiff." There being no properly asserted facts to support this conclusion and rebut those set forth in defendants' affidavits, we find that there is an appeal remedy available to employees such as the plaintiff and that the plaintiff failed to utilize it.

We do not accept plaintiff's contention that he was not informed of avenues of appeal. Even if he were ignorant of the Section 57 G procedure, we feel that the rationale of *Pawlak v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local Union No. 764, et al.,* 444 F.Supp. 807 (M.D. Pa.) opinion dated April 26, 1977, *affirmed,* (3d Cir. C.A.No. 77–1823), 571 F.2d 572 (Feb. 22, 1978) applies: "The mere fact that he has never been involved in or aware of the use of the mechanism cannot catapult him over the exhaustion hurdle to this Court's jurisdiction." At page 811.

Thus, we conclude that plaintiff failed to exhaust intra-union remedies despite their availability and, accordingly, we shall grant the Council's motion for summary judgment.

■■■ The next issue is whether the failure of plaintiff to exhaust his intra-union remedies precludes this action against McKee. A case that recently considered the issue is *Winter v. Local Union No. 639, Affiliated With the International Brotherhood of Teamsters and Maloney Concrete Company,* 569 F.2d 146 (opinion dated December 30, 1977). Although that court affirmed the summary judgment motion of the employer on other grounds, namely, that the employer committed no breach of the collective bargaining agreement, the opinion nonetheless discusses this issue thoroughly. First, the Court notes that several courts have said that this defense is not available to the employer. See *Retana v. Apartment Operators Local 14,* 453 F.2d 1018, 1027, n. 16 (9th Cir. 1972) (dictum). In *Orphan v. Furnco Construction Corporation,* 466 F.2d 795 (7th Cir. 1972), the court observed that strictly speaking the defense of failure to exhaust intra-union remedies is only available to the Union, because the defense exists by virtue of its contractual relationship with the employee-member. That court recognized that although it can be argued that providing such a defense to the employer would enhance the national policy of favoring arbitration, it stated that this argument is only valid in situations where the appeal procedure could result in a reversal of the Union's action in refusing to process a grievance and a concomitant timely filing or reinstating of the grievance according to the provisions of the collective bargaining agreement.

The *Winter* court also discussed authorities suggesting that the defense is available to the employer. These cases include *Bradley v. Ford Motor Co.,* 417 F.Supp. 23 (N.D. Ill.1975); *Fleming v. Chrysler Corp.,* 416 F.Supp. 1258 (E.D.Mich.1975); *Brookins v. Chrysler Corp.,* 381 F.Supp. 563 (E.D.Mich. 1974); *Harrington v. Chrysler Corp.,* 303 F.Supp. 495 (E.D.Mich.1969). *Winter* noted that all these cases involved the United Automobile Workers (UAW), three being from the Eastern District of Michigan. Their rationale is that the employer is entitled to rely on a grievance arbitration unless the Union breaches its duty of good faith; that if the Union is dismissed from the suit because Union remedies were not exhausted, it is unfair to force the employer to remain, because if the employee had exhausted remedies the good faith of the Union might have been shown. In noting that the cases all involved the UAW, the *Winter* court noted that UAW appellate procedures provide appeal all the way to a non-partisan panel composed of eminent persons having no connection with the UAW; thus, an employee can have his rights fully vindicated.

However, not all unions provide such relief, and some provide only sanctions against the alleged offenders and not redress to the offended individual. Thus, the *Winter* court echoed the concern of the *Orphan* court that it cannot be said that an employer should always be provided the defense of exhaustion of internal union remedies, and especially in situations where the intra-union remedies provide for discipline but not for vindication and reversal of the allegedly improper decision.

Applying the collective impact of all of this rationale to the instant case, we hold that the employer is protected by the defense in this case. True, the remedy in this case does not go as far as the UAW remedy in the cases cited above, but it does provide for the possibility of reversal of the lower Union officials' decision and reinstatement of the grievance. Thus, the concerns of *Orphan* and *Winter* are properly met. Also, in this case, the Eastern Michigan rationale applies: had plaintiff exhausted his remedies, it might have been shown that the Council did not breach its duty to plaintiff, in which case the direct action against the employer, permitted by *Vaca v. Sipes,* 386 U.S. 171, 186, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) when the union is shown to have breached its duty of fair representation, would not lie.

For all these reasons, we hold that the failure to exhaust intra-union remedies also precludes plaintiff's action against McKee, and accordingly we shall grant McKee's motion for summary judgment.