**BROTHERHOOD RAILWAY CARMEN OF the UNITED STATES AND CANADA, et al., Plaintiffs,**

v.

**DELPRO COMPANY, et al., Defendants.**

**Civ. A. No. 82–464 MMS.**

United States District Court, D. Delaware.

Jan. 24, 1984.

Sheldon Sandler, Young, Conaway, Stargatt & Taylor, Wilmington, Del., for plaintiffs; Edward J. Hickey, Jr., Michael S. Wolly, Thomas A. Woodley, and Joshua M. Javits, Mulholland & Hickey, Washington, D.C., of counsel.

Richard G. Elliott, Jr., and Gregory P. Williams, Richards, Layton & Finger, Wilmington, Del., for defendants.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

This is a class action suit brought by Brotherhood Railway Carmen of the United States and Canada ("BRC") and Earl D. Whaley, an individual employee and union member, as representatives of a class of employees who worked for Delpro Company ("Delpro") and who were furloughed in March or June 1982, and terminated in July, 1982, when Delpro closed its Bear, Delaware, facility. Plaintiffs allege that Delpro and its corporate parent, Trailer Train Company, intentionally, willfully and in bad faith violated the Railway Labor Act ("RLA"), 45 U.S.C. § 151 et seq. (1976), by failing to bargain in good faith and by unilaterally changing working conditions and terms of employment.[1] Plaintiffs seek declaratory and injunctive relief, back pay and punitive damages.

In a previous opinion, *Brotherhood Railway Carmen of United States and Canada v. Delpro Co.*, 549 F.Supp. 780, 782 (D.Del.1982), the Court held that BRC could seek declaratory and injunctive relief other than reinstatement of terminated employees but that BRC had no standing to seek reinstatement, back pay, benefits or punitive damages on behalf of individual employees. Thus, those latter claims are now being pursued only by the class plaintiffs. In a later opinion, *Brotherhood Railway Carmen of United States and Canada v. Delpro Co.*, 98 F.R.D. 471 (D.Del.1983), the Court certified the plaintiff class under both Rule 23(b)(2) and Rule 23(b)(3). Reinstatement, back pay and benefits, the Court held, could be brought under Rule 23(b)(2), but the punitive damage issue, the Court held, could be maintained only under Rule 23(b)(3). *Id.* at 478. The Court ordered plaintiffs to submit a proposed form of notice on the punitive damage aspect of the case as required in 23(b)(3) class actions. *See* Fed.R.Civ.P. 23(c)(2).

Prior to class certification, neither defendants, plaintiffs nor the Court questioned the propriety of punitive damages under the RLA. This issue was raised for the first time when, soon after the Court's certification decision issued, defendants moved to dismiss the class plaintiffs' punitive damage claim. That motion is now before the Court.[2]

*Discussion*

The class plaintiffs' punitive damage claim faces considerable precedential obstacles. Although one decision in the Southern District of New York has held punitive damages recoverable under the RLA against an employer, *see Brown v. World Airways, Inc.*, 539 F.Supp. 179 (S.D.N.Y. 1982), that case is in possible conflict with an earlier decision in this District. *See Brady v. Trans World Airlines, Inc.*, 196 F.Supp. 504 (D.Del.1961), *aff'd on later appeal*, 401 F.2d 87 (3d Cir.1968), *cert. denied*, 393 U.S. 1048, 89 S.Ct. 684, 21 L.Ed.2d 691 (1969). Moreover, the federal courts have disallowed punitive damage awards under virtually every federal labor statute against both unions and employers. *See e.g., International Brotherhood of Electrical Workers v. Foust*, 442 U.S. 42, 99 S.Ct. 2121, 60 L.Ed.2d 698 (1979) (no punitive damages against union for breach of duty of fair representation under RLA); *Republic Steel Corp. v. NLRB*, 311 U.S. 7, 61 S.Ct. 77, 85 L.Ed. 6 (1940) (no punitive

---

1. These actions, plaintiffs contend, violated section 2 First, Second, Fourth, Seventh and Eleventh, and section 6, of the RLA, 45 U.S.C. §§ 152, 156.

2. The Court stayed notification of class members pending resolution of defendants' motion to dismiss the punitive damage claim. Because the Court holds *infra* that punitive damages may not be recovered in this case, its prior order will be modified so that no class notice need be distributed.

damages against employer for unfair labor practice under National Labor Relations Act); *Local 127, United Shoe Workers v. Brooks Shoe Manufacturing Co.*, 298 F.2d 277 (3d Cir.1962) (no punitive damages against employer for breach of collective bargaining agreement under Labor Management Relations Act); *Dian v. United Steelworkers of America*, 486 F.Supp. 700 (E.D.Pa.1980) (no punitive damages under Labor Management Relations Act against union for breach of duty of fair representation); *Delaware Coca-Cola Bottling Co. v. General Teamsters Local Union 326*, 474 F.Supp. 777 (D.Del.1979), *rev'd on other grounds*, 624 F.2d 1182 (3d Cir.1980) (no punitive damages under Labor Management Relations Act against union for breach of collective bargaining agreement); *see generally Deboles v. Trans World Airlines*, 552 F.2d 1005, 1019 (3d Cir.), *cert. denied*, 434 U.S. 837, 98 S.Ct. 126, 54 L.Ed.2d 98 (1977) (discussing case law under various federal labor statutes denying punitive damage awards); *but see International Brotherhood of Electrical Workers v. Foust*, 442 U.S. at 59, 99 S.Ct. at 2131 (Blackmun, J., concurring) (circuit courts of appeals have awarded punitive damages against unions for violations of Landrum-Griffin Act, 29 U.S.C. §§ 411, 412).[3] Because the Court is not convinced it should deviate from this line of cases, it will grant defendants' motion to dismiss plaintiffs' punitive damage claim.

Defendants place primary reliance on this District's opinion in *Brady v. Trans World Airlines, Inc.* Brady sued both his union and his employer for violations of the

RLA. The union moved to strike Brady's demand for a jury trial. "Intermixed" with this jury trial issue, Judge Wright explained, was the question of whether the plaintiff was entitled to punitive damages. 196 F.Supp. at 505. If punitive damages were available, plaintiff would be entitled to a jury trial because an equity court, without express statutory authority, would be unable to award punitive damages itself. *Id.* at 505–506. Such damages, the Court held, were unavailable. Judge Wright explained that punitive damages could not be recovered under the plaintiff's first statutory cause of action, brought under the RLA's union security clause provision, 45 U.S.C. § 152 (Eleventh), because the Supreme Court had held in *United Brotherhood of Carpenters and Joiners v. NLRB*, 365 U.S. 651, 81 S.Ct. 875, 6 L.Ed.2d 1 (1961), that the corresponding union security clause provisions of the Labor Management Relations Act did not permit punitive damages. Judge Wright explained that:

> the regulation of economic relations between labor and management is an exceedingly delicate matter, and this Court is unwilling to employ the crude device of punitive damages as a remedy in causes founded on a detailed and pervasive federal statutory scheme without express authorization from Congress.

*Id.* at 506.[4]

Although this broad language in *Brady* suggests that all punitive damage awards are barred under the RLA because of Congress' failure to provide explicitly for their recovery, it is uncertain whether Judge

---

**3.** The Supreme Court in *Foust* declined to decide the propriety of punitive awards under the Landrum-Griffin Act. *Int'l Bhd. Elec. Workers v. Foust*, 442 U.S. at 47 n. 9, 99 S.Ct. at 2125 n. 9. Justice Blackmun's concurring opinion criticized the majority for its inability to distinguish the Landrum-Griffin Act cases from those arising under other federal labor statutes. 442 U.S. at 59, 99 S.Ct. at 2131 (Blackmun, J., concurring).

One court has harmonized the Landrum-Griffin act cases with *Foust* as not involving a statute, like the RLA, with an overarching purpose of promoting collective bargaining and peaceful industrial relations, but as involving a "Bill of Rights for union members." *Eaton v. D'Amato*, 581 F.Supp. 743 (D.D.C.1980).

**4.** The plaintiff's second statutory cause of action in *Brady* was based on the union's breach of its duty of fair representation. Punitive damages were held unavailable under that claim also. The threat of a punitive damage award for breach of the duty of fair representation, the Court stated, "may have unforeseeable effects upon the institution of free collective bargaining...." 196 F.Supp. at 506. Furthermore, Judge Wright explained "the fact that the duty itself has been read into the Act by the courts may well be cause to limit the relief obtainable to equitable remedies and compensatory damages." *Id.*

Wright's holding reached the defendant employer. Only the union moved to strike the plaintiff's jury demand, not the employer. This Court, therefore, cannot rely on *Brady* as conclusive precedent.

A fresh look at the question of punitive damages is, in any event, demanded by *International Brotherhood of Electrical Workers v. Foust*, 442 U.S. 42, 99 S.Ct. 2121, 60 L.Ed.2d 698. There the Supreme Court held that punitive damages for a union's breach of its duty of fair representation may not be recovered under the RLA. The Supreme Court sought in *Foust* to determine "[w]hether awarding punitive damages would comport with ... national labor policy." *Id.* at 48, 99 S.Ct. at 2125. Courts must "implement a remedial scheme," the Supreme Court explained, "that will best effectuate the purposes of the Railway Labor Act, recognizing that the overarching legislative goal is to facilitate collective bargaining and to achieve industrial peace." *Id.* at 47, 99 S.Ct. at 2125.

Punitive damage awards against unions for unfair representation, the Court concluded, would not advance national labor policy. Offsetting potential benefits of punitive awards, the Court explained, "is the possibility that punitive awards could impair the financial stability of unions and unsettle the careful balance of individual and collective interests which [the Supreme Court had] previously articulated in the unfair representation area." 442 U.S. at 48, 99 S.Ct. at 2126. Unpredictable punitive awards "could deplete union treasuries, thereby impairing the effectiveness of unions as collective-bargaining agents." *Id.* at 50–51, 99 S.Ct. at 2127. In addition, the threat of large punitive awards might impinge on union discretion in handling grievances by forcing unions "to process frivolous claims or resist fair settlements," *id.* at 52, 99 S.Ct. at 2127, against the interests of its members. Furthermore, under the National Labor Relations Act and Labor Management Relations Act, the Court noted, Supreme Court decisions have refused to permit punitive damage awards

because of the "essentially remedial" goals of those acts. *Id.* "Like the NLRA," the Court explained, "the Railway Labor Act is essentially remedial in purpose." *Id.*

The *Foust* court directed its analysis to suits against unions. That analysis is not immediately transferable to actions against employers. Two of *Foust's* policy arguments in particular have less import in suits against management. One is *Foust's* concern with the economic hardship wrought by punitive awards. The other is the *Foust* Court's fear that collective interests would be sacrificed for those of the individual. Employers, with their larger treasuries and their ability to pass costs on to customers, would under most circumstances be able to absorb or deflect the financial impact of a sizable punitive award. In contrast, a large punitive award against a labor union could easily cripple its financial health. In addition, awards against employers would rarely compromise the collective interest. It is conceivable that an employer under threat of a punitive damage suit by an individual employee might grant special treatment to that employee against the best judgment of the union, thereby undermining the union's credibility. But this potential conflict with the collective interest is far more remote than that envisioned in *Foust*. A union, unlike an employer, has an obligation to protect the interest of its membership. It must, day after day, decide which claims to press and which claims not to press with management, always with an eye on the long term welfare of its constituents. Outside influences on the union's strategic judgments would thus impinge immediately on the union's ability to represent its membership.

Other policy reasons do, however, militate strongly against recognition of a punitive award. One important reason flows directly from the creation in *Foust* of a *per se* rule against exemplary damages in suits against unions for breaches of their duty of fair representation. The Supreme Court likely would extend *Foust* to suits by management against unions.[5] Without a simi-

---

5. In fact, a breach of a union's duty of fair representation, with its overtones of broken fi-

lar *per se* rule to protect management, the careful balance in labor-management relations under which employers and unions have operated for years would be upset. To allow a threat of unpredictable punitive awards against employers, where unions sitting opposite them at the bargaining table are immune from such threats, would unfairly multiply the unions' arsenal of negotiating weapons. If a union could arrive at the bargaining table armed with a uniquely held power to file punitive damage suits, it could inject an unsettling factor not now present in labor-management negotiations.[6] An employer might feel compelled to concede issues that it honestly believed were not in the best interest of the company or of its workers. I do not believe that Congress intended to create this imbalance in the bargaining process.

More generally, introducing punitive damages on the labor scene may have a detrimental effect on the congressional goal of furthering congenial labor relations between union and management. As Chief Justice Warren stated in his dissenting opinion in *United Automobile Workers v. Russell*, 356 U.S. 634, 78 S.Ct. 932, 2 L.Ed.2d 1030 (1958), cited with approval in *Foust*, 442 U.S. at 51 n. 14, 99 S.Ct. at 2127 n. 14,

> The parties to labor controversies have enough devices for making one another "smart" without this Court putting its stamp of approval upon another. I can conceive of nothing more disruptive of congenial labor relations than arming employee, union and management with the potential for "smarting" one another with exemplary damages. Even without the punitive element, a damage action has an unfavorable effect on the climate of labor relations. Each new step in the proceedings rekindles the animosity. Until final judgment the action is a constant source of friction between the parties.

356 U.S. at 653, 78 S.Ct. at 943 (Warren, C.J., dissenting).

Finally, punitive damage awards would conflict with the general goals of national labor legislation. See *Foust*, 442 U.S. at 52, 99 S.Ct. at 2127. The Supreme Court indicated long before *Foust* the remedial objectives of the federal labor laws. For example, in *Republic Steel Corp. v. NLRB*, 311 U.S. 7, 61 S.Ct. 77, 85 L.Ed. 6, the Supreme Court rejected an award of punitive damages against an employer for unfair labor practices under the National Labor Relations Act. In part the Court's decision rested on its belief that Congress did not intend to grant the National Labor Relations Board "discretion to devise punitive measures." *Id.* at 11, 61 S.Ct. at 79. But broader language in *Republic Steel* applied generally to the NLRA, not just to Board powers. The Court stated:

> The [NLRA] is essentially remedial. It does not carry a penal program declaring the described unfair labor practices to be crimes. The Act does not prescribe penalties or fines in vindication of public rights or provide indemnity against community losses as distinguished from the protection and compensation of employees. Had Congress been intent upon such a program, we cannot doubt that Congress would have expressed its intent and would itself have defined its retributive scheme.

*Id.* at 10, 61 S.Ct. at 79. Similar remedial objectives underlie the Railway Labor Act. See *Foust*, 442 U.S. at 52, 99 S.Ct. at 2127 (equating remedial goals of NRLA and RLA); *Farmer v. A.R.A. Services, Inc.*, 660 F.2d 1096, 1106–07 (6th Cir.1981) (same). In this action especially, where the suit arises under a statutory right of action rather than a judicially created cause of action as in *Foust*, congressional intent should be closely attended.

---

duciary obligations, presents a stronger case for punitive damages than does a violation of a union's statutory requirements under the Railway Labor Act.

**6.** It is significant that other than *Brown v. World Airways, Inc.*, 539 F.Supp. 179, the Court

has discovered no cases in which punitive damages have been awarded under the RLA against union or employer. It is reasonable to assume that labor and management have, in general, negotiated with each other unhindered by threats of punitive damages.

Justice Blackmun criticized the *Foust* majority for relying on *Republic Steel* as support for an "essentially remedial" labor policy "inhospitable to punitive awards" because, Justice Blackmun believed, the question faced in *Republic Steel* "was simply one of the Board's statutory competence." 442 U.S. at 55, 99 S.Ct. at 2129 (Blackmun, J., concurring). Were Justice Blackmun's interpretation of *Republic Steel* accepted by the *Foust* majority, this Court would give less weight to that decision. Five justices in *Foust*, however, embraced an expansive interpretation of *Republic Steel*, and this Court finds it difficult, even without policy reasons as compelling as those in *Foust*, to endorse an interpretation of the Railway Labor Act that contradicts the Supreme Court's interpretation of the National Labor Relations Act.[7] The present action is in essence a refusal to bargain case. Were a non-railroad employer to defend a similar lawsuit under the NLRA, its liability would be limited to injunctive relief and compensatory damages. The Court can conceive of no rationale for subjecting railroads and airlines to an additional element of damages not applicable against most other industries.

Plaintiffs rely on *Brown v. World Airways, Inc.*, 539 F.Supp. 179 (S.D.N.Y.1982), a RLA case in which punitive damages were held recoverable against an employer. *Brown*, however, arose under unique circumstances. The plaintiff there was an employee who, the court explained, was "not represented by a union which [could] protect his interests through collective bargaining or other methods." *Id.* at 181. The *Brown* court specifically distinguished *Brady* and other cases relied on by World Airways as involving employees who were represented by unions. *Id.* Although "the general purpose of the federal labor laws is remedial," the court explained, "there are special reasons for awarding punitive damages in a case where an employee is not represented by a union." *Id.* A punitive damage award "against an employer who illegally seeks to hinder the organization of his employees would deter such conduct and hence further the goals of collective bargaining and industrial peace." *Id.* The *Brown* decision thus does not support punitive awards in favor of unionized workers. Accordingly, even were this Court to follow *Brown*,[8] it would not be compelled to recognize a punitive damage award in this case.[9]

7. The Third Circuit Court of Appeals has previously interpreted *Republic Steel* as prescribing a rule relevant beyond NLRB powers. In *Local 127, United Shoe Workers* a majority of judges in that en banc decision cited *Republic Steel* as support for nonrecognition of punitive awards in section 301 actions under the Labor Management Relations Act. *See* 298 F.2d at 284 (Biggs, J., concurring in part and dissenting in part); 298 F.2d at 285–86 (Kalodner, J., dissenting with Goodrich, Hastie and Smith, JJ.).

In *Deboles v. Trans World Airlines*, 552 F.2d 1005, decided before *Foust*, the Third Circuit Court of Appeals did, in dicta, suggest that in some circumstances punitive awards under the RLA might be maintainable against employers. *See id.* at 1019 (no indication that RLA deviates from general remedial labor policy "at least with respect to union misconduct"). The Court of Appeals has never, however, squarely faced the question of punitive damages against employers under the RLA. *Cf. Rohrer v. Conemaugh & B.L.R.R. Co.*, 359 F.2d 127 (3d Cir. 1966) (punitive damages sought but case dismissed); *Roberts v. Lehigh & N.E. Ry. Co.*, 323 F.2d 219 (3d Cir.1963) (punitive damages sought but not discussed). *See also Bhd. Ry. Clerks v. Philadelphia B. & N.E.R.R. Co.*, 78 Lab.Cas. (CCH) ¶ 11434 (E.D.Pa.1976) (punitive damages

sought but not discussed). Some courts in other circuits have, without discussion, implied in dicta that punitive damages might be recoverable in some cases. *See Bangor & A.R.R. Co. v. Bhd. Locomotive Firemen & Engineermen*, 442 F.2d 812, 821 (D.C.Cir.1971) (employers did not act "so unreasonably as to warrant assessment of punitive damages"); *Air Line Pilots Ass'n v. Scheduled Skyways, Inc.*, 567 F.Supp. 171, 179 (W.D.Ark.1983) (no punitive damages recoverable because plaintiff claimed no compensatory damages).

8. The Court expresses no view as to whether it would recognize a punitive damage award in favor of an unrepresented employee.

9. Plaintiff also relies on *Brotherhood of Railroad Signalmen v. Southern Railway Co.*, 380 F.2d 59 (4th Cir.1967), as supporting an award of punitive damages against employers for violations of the RLA. The National Railroad Adjustment Board awarded damages in that case to union members in the amount that they would have earned had the union been permitted to perform certain work that had been improperly contracted out and incorrectly assigned to a different union. The district court refused to enforce this award because the em-

**1338**

In summary, the Court does not believe that an award of punitive damages against an employer for violations of the RLA would further the national labor policy of facilitating collective bargaining and achieving industrial peace, nor would it be consistent with congressional intent as reflected in other federal labor laws. The duties imposed on employers under the Railway Labor Act may be enforced by suits for declaratory or injunctive relief, and injured employees may be compensated for any actual damages they suffer. But the RLA does not impose additional penalties against violators of the Act. Consequently, plaintiffs are not entitled to pursue their punitive damage claim and defendants' motion to dismiss that claim will be granted.

An appropriate order will issue.

ployees receiving the award had been fully employed during all relevant times and could not, therefore, have lost any wages. The Court of Appeals, while remanding the case to the Board for reconsideration on the merits, disagreed with the district court's damages decision. The Court of Appeals did not, however, describe the Board's award of damages "punitive." Nor, it appears, did defendants object to the damage calculation as a "punitive" award. The Court of Appeals held only that the Board was not strictly limited to awarding a traditional breach of contract measure of damages. *Id.* at 67–68. Furthermore, the Court apparently believed that although the individual recipients of the Board's award may have been employed, the union as a whole still suffered damage and some employees may have been able to perform the extra work. *See id.* at 67. The district court, explained the Court of Appeals,

> ... ignore[d] the loss of opportunities for earnings resulting from the contracting out of work allocated by agreement to Brotherhood members—a deprivation amounting to a tangible loss of work and pay for which the

board is not precluded from granting compensation. *Nothing in the record establishes the unavailability of signalmen to perform the work contracted out by the railroad.*

*Id.* (emphasis added). To deny an award of damages in cases where an employee is not laid off, the Court explained, would allow employers to "unilterally contract out work that has been allocated by agreement to the union, under no greater threat than liability for merely nominal damages...." *Id.* at 68. A collective bargaining agreement, if employers could so act with impunity, "would soon become a worthless scrap of paper." *Id.* at 68.

Even if *Southern Railway* is construed as departing from a strictly "remedial" approach to the RLA, it does not compel a broad rule allowing awards of punitive damages against employers, especially not in the instant case which involves massive employee layoffs and a potential assessment of far more than nominal damages. To the extent that *Southern Railway* might support a punitive damage award in the instant case, this Court respectfully disagrees with that decision.